# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISON

| | | |
|---|---|---|
| THEODORE ALEXANDER, | ) | CASE NO. 4:18-CV-02926-JJH |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN DAVID GRAY, | ) | CARMEN E. HENDERSON |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

## I. Introduction

Petitioner, Theodore Alexander, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Alexander is an Ohio inmate currently serving fifteen-years to life in prison for murder and felonious assault. Alexander asserts one ground for relief. (ECF Nos. 4, 13). This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Alexander's petition and other case-dispositive motions. Because Alexander's claim is meritless, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II. Relevant Factual History

The Seventh District Ohio Court of Appeals set forth the following facts on direct appeal:

> At 1:19 a.m. on September 29, 2013, Youngstown Police Department Officer Anthony Congemi ("Congemi") responded to a report that there had been a stabbing at 107 Hilton Avenue in Youngstown. Congemi proceeded to the address, the upper floor of a duplex, where he found West lying face down on the dining room floor. West appeared to be alive when Congemi arrived. Appellant

and his neighbor, Mario Townsend ("Townsend") were also present in the apartment. Congemi determined that Appellant resided at the apartment. Emergency services arrived and Congemi and another officer, Anthony Marzullo ("Marzullo"), began to process the crime scene. A call was also placed to Detective Sergeant Ronald Rodway ("Rodway"), who was assigned to investigate the incident. When Rodway arrived at the scene he spoke to Appellant. Appellant told Rodway that he heard a knock at his downstairs door. Answering the knock, he saw West, whom he knew, at the door. West was holding his chest but did not speak. After they walked upstairs, West informed Appellant he had been stabbed "down the street" and then collapsed on the dining room floor. Appellant went next door to get his neighbor, Townsend, who instructed Appellant to call 911. Townsend and Appellant proceeded back to Appellant's dining room and awaited the arrival of emergency services. Appellant indicated to Rodway that before the stabbing occurred, he had not seen West for a week.

Rodway also spoke to Townsend and Cathy Howell ("Howell"), Appellant's girlfriend who also resided at the apartment. Townsend confirmed that Appellant had come to his apartment looking for help. Contrary to Appellant's statement, however, Howell told Rodway that West had been at the apartment just two days earlier.

Rodway testified that due to the conflicting statements as to when Appellant had last seen West, and Appellant's nervous appearance at the scene, he asked Appellant to accompany him to the police station to make a formal statement. During this second interview, Appellant told Rodway that once he and West walked up to the dining room together, West took off his shirt before he collapsed on the floor. Appellant went into his bathroom and got dressed before going to Townsend's apartment for help. When Appellant and Townsend came back to the apartment, West appeared to still be alive. Appellant then said that West may have spent the night at his apartment two days earlier, but Appellant was not sure because he was staying at another house in the neighborhood, putting up drywall. Rodway asked for information about the homeowners of this property so that they could be interviewed. Appellant stated that he did not want to give this information, because he did not want these homeowners to become involved. After being pressed further by Rodway for the information, Appellant changed his story, now saying that he was home on the night that Howell told police West spent the night, but that he was in the other bedroom with his girlfriend and did not know for sure whether West was there.

> On October 22, 2013, Appellant was summoned to the Youngstown Police Department for a third interview with Rodway. During this interview, Appellant told Rodway that after West arrived at his apartment, he sent West upstairs alone while he went to Townsend's apartment for help. When Appellant arrived back at his apartment with Townsend, they found West lying on the dining floor with his shirt off, bleeding but apparently still alive. Appellant stated at this interview that West never told him that he had been stabbed, but Appellant noticed West was holding his chest when he arrived.

*Ohio v. Alexander*, No. 16 MA 0113, 2018 WL 1779369, at *1–2 (Ohio Ct. App. Apr. 12, 2018).

### III. Relevant State Procedural History

#### A. Indictment

Alexander was indicted on October 31, 2013, for:

> Count 1: Murder, a felony in violation of Ohio Rev. Code § 2903.02(A)(D).
>
> Count 2: Murder, a felony in violation of Ohio Rev. Code § 2903.02(B)(D).
>
> Count 3: Felonious Assault, a felony of the second degree in violation of Ohio Rev. Code § 2903.11(A)(2)(D).

(ECF No. 11-1, PageID #: 78).

#### B. Motion to Suppress

On December 10, 2014, Alexander moved to suppress the statements he made to police on September 29, 2013 and October 22, 2013, the evidence obtained from a shirt owned by Alexander and seized by police, all items seized from Alexander's apartment without a warrant on the night of the stabbing, and cell phone records obtained by an insufficient warrant. (ECF No. 11-1, PageID #: 80). The Court held an evidentiary hearing. After considering both the State's and Alexander's post-hearing memorandums, the trial court overruled in part and sustained in part Alexander's motion. (ECF No. 11-1, PageID #: 176–80). The court suppressed the cell phone records but did not suppress any other evidence. (ECF No. 11-1, PageID #: 176–80).

### C. Jury Trial and Verdict

On June 28, 2016, Alexander's jury trial began. On June 30, 2016, a jury found Alexander guilty of Counts II and III—Murder and felonious assault. (ECF No. 11-1, PageID #: 468–69). On July 12, 2016, the trial court held a sentencing hearing and sentenced Alexander to fifteen-years to life on Count II. (ECF No. 11-1, PageID #: 173). Count III merged for purposes of sentencing. (ECF No. 11-1, PageID #: 173).

### D. Direct Appeal

On appeal, represented by new counsel, Thomas raised two assignments of error:

> 1. The trial court erred as a matter of law and to the prejudice of Appellant and violated his right to due process of law under the Fourteenth Amendment by overruling Appellant's motion to suppress and admitting into evidence Appellant's statements given to police on September 29, 2013 and October 22, 2013.
>
> 2. The trial court denied Appellant Due Process under the Fourteenth Amendment due to the fact his convictions for murder, and felonious assault were against the manifest weight of the evidence and the jury's verdict was inconsistent with the evidence and testimony presented at trial.

(ECF No. 11-1, PageID #: 155). On April 12, 2018, the Seventh District Court of Appeals affirmed the judgment of the trial court. *Alexander*, 2018 WL 1779369, at *7.

### E. Appeal to the Ohio Supreme Court

On May 17, 2018, Alexander timely filed a pro se appeal notice in the Ohio Supreme Court. (ECF No. 11-1, PageID #: 255). Alexander's memorandum in support of jurisdiction raised the following propositions of law:

> 1. A trial court errs as a matter of law and to the prejudice of Appellant and violated Due Process of law under the Fourteenth Amendment by overruling Appellant's motion to suppress and admitting into evidence Appellant's statements given to police on September 29, 2013 and October 22, 2013.

> 2. A trial court errs when it denies an Appellant's Due Process under the Fourteenth Amendment due to the fact that his convictions were against the weight of the evidence and the jury's verdict was inconsistent with the evidence and testimony presented at trial.

(ECF No. 11-1, PageID #: 258). Counsel was subsequently appointed to represent Alexander. On May 29, 2018, Alexander's counsel filed an amended notice of appeal. (ECF No. 11-1, PageID #: 287). The amended memorandum in support of jurisdiction raised the following propositions of law:

> 1. The trial court and the Seventh District Court of Appeals erred as a matter of law and to the prejudice of Appellant and violated his right to Due Process under the Fourteenth Amendment by overruling Appellant's motion to suppress and admitting into evidence Appellant's statements given to police on September 29, 2013 and October 22, 2013
>
> 2. The trial court and the Seventh District Court of Appeals denied Appellant Due Process under the Fourteenth Amendment due to the fact his convictions for murder, and felonious assault were against the manifest weight of the evidence and the jury's verdict was inconsistent with the evidence and testimony presented at trial.

(ECF No. 11-1, PageID #: 290). On August 15, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (ECF No. 11-1, PageID #: 327).

IV. **Federal Habeas Corpus Petition**

On December 20, 2018, Alexander petitioned pro se that this Court issue a writ of habeas corpus.[1] (ECF No. 4). Alexander asserted one ground for relief:

---

[1] Although Alexander stated that he placed his petition in the prison mailing system on September 6, 2018 (ECF No. 4 at 15), the Court received the petition on December 20, 2018. (ECF No. 4). Despite the prison mailbox rule, both Alexander and Respondent used the December date as the date Alexander filed the petition. (ECF No. 13 at 3); (ECF No. at 11 at 6). Because both dates would be considered timely and the parties agree on the December date, the Court used the December date.

> **Ground One**: Petitioner's convictions for murder and felonious assault were insufficient to support the Jury's verdict
> **Supporting Facts**: The state court unreasonably applied federal law to the facts of petitioner's case. The evidence adduced at trial was insufficient to support a finding of guilt. Petitioner's rights under the Fourteenth Amendment's Due process clause were violated due to petitioner's conviction.

(ECF Nos. 4, 13). Respondent filed the return of writ on May 2, 2019. (ECF No. 11). Alexander filed his traverse on June 19, 2019. (ECF No. 13).

V.   **Legal Standards**

   A.   **Jurisdiction**

District courts may entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(b). A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Mahoning County Court of Common Pleas sentenced Alexander, and Mahoning County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Alexander's § 2254 petition.

   B.   **Cognizable Federal Claim**

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (citations omitted).

C. **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily

intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*. (citations omitted).

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*,

558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id*. at 102 (citations omitted). "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## VI.    Discussion

Alexander argues that there was insufficient evidence to convict him of felonious assault or murder. He notes that purely circumstantial evidence can support a conviction but contends that, in his case, the evidence amounted only to a reasonable speculation. When a court reviews a sufficiency of the evidence claim on federal habeas appeal, there are two relevant inquiries. First, the court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In doing so, the court does not

reweigh the evidence, re-evaluate witness credibility, or substitute its judgment for that of the jury. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citations omitted). Even though the court may not have convicted the defendant if it were the trier of fact, it "must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution." *Id.* Second, assuming the court concludes that no reasonable jury could have found the defendant guilty beyond a reasonable doubt, the court must still defer to the state appellate court's decision as long as it was not unreasonable. *Id.* (citing 28 U.S.C. § 2254(d)(2)).

Alexander was convicted of murder and felonious assault. To be found guilty of murder under Ohio Rev. Code § 2903.02(A)(D), Alexander must have caused the death of another "as a proximate result of" committing or attempting to commit "an offense of violence that is a felony in the first or second degree." To be found guilty of felonious assault under Ohio Rev. Code § 2903.11(A)(2)(D), Alexander must have caused or attempted to cause physical harm to another "by means of a deadly weapon or dangerous ordnance." "[C]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994) (citations omitted).

Alexander argues that the State did not prove that he was guilty of either charge. He notes that no one witnessed the crime, and all evidence was purely circumstantial. (ECF No. 13 at 5). He asserts that no reasonable jury could have found him guilty because all witnesses agreed there was no evidence of a struggle, the coroner testified that it was possible the victim was stabbed and then walked a block or two as Alexander alleged, and there was no motive. (ECF No. 13 at 5–6, 10). The appellate court rejected his argument, reasoning:

> Appellant contends the state failed to present sufficient evidence at trial showing that he committed the offense. He complains that only circumstantial evidence was presented, but no direct eyewitness or other direct evidence to link Appellant to this crime.

The state highlights the testimony from a number of police officers that were present at the scene and assisted in conducting the investigation. Marzullo and Congemi both testified that they conducted a thorough search of Appellant's residence including the exterior and stairwell, looking for blood evidence with which to corroborate Appellant's account that West told him he was stabbed elsewhere. Rodway testified that the area outside was "very well lit" on the night of the incident and no blood evidence was found outside or in the stairwell. (Tr., p. 344.) The only blood evidence that was found was located in Appellant's dining area and the kitchen sink near where West's body was found. (Tr., p. 212.) Marzullo testified that a number of knives were discovered in Appellant's apartment, including a knife in the kitchen sink which appeared to have a number of blood droplets nearby, a knife in one bedroom of Appellant's apartment, and a third in a second bedroom.

Andrea Weisenburger, a forensic scientist assigned to the case, testified that she analyzed two of the knives and a swab of the blood from the kitchen sink area. She also had DNA standards from both West and Appellant. The kitchen knife blade results were inconclusive, because there was insufficient DNA for testing. The DNA profile on the kitchen knife handle was consistent with Appellant's DNA profile. (Tr., pp. 322–323.) West's DNA profile was excluded from the handle of the kitchen knife and from a knife found in one of the bedrooms. (Tr., pp. 330–331.)

Rodway testified that he spoke with Appellant on three occasions. The first was at the scene, where Appellant gave information as to when he last saw West that differed from the information provided by his neighbor and from his live-in girlfriend. For that reason, Rodway conducted a formal interview at the station. Appellant's story at the station changed in regard to when he last saw West and also as to how the events unfolded at the scene. Appellant originally stated that West showed up at his door claiming to be stabbed in the street and that he had not previously seen West in a week. Appellant and West walked upstairs together where West took off his shirt and collapsed on the floor. Appellant said he then went to get Townsend for help. During the second interview, Appellant stated that West appeared at his door but said nothing. The two went upstairs together where West took off his shirt and collapsed on the floor. Appellant went to the bathroom to change and then went to get Townsend.

We note that this second statement of events differs only slightly to the information provided at the scene. However, when confronted by Rodway during the interview with information that Appellant

may have seen West only a few days prior to the incident, rather than a week as Appellant earlier stated, Appellant said that he had been drywalling someone's house and did not know whether West had made an overnight stay at Appellant's home. When questioned about contact information for the homeowners for whom Appellant was allegedly hanging drywall, Appellant initially refused to answer, saying he wanted to avoid getting those individuals involved. Appellant then changed his story again, dropping his story about drywalling and now saying that West may have made an overnight visit to Appellant's home a few days earlier, but Appellant had stayed in his bedroom and did not see West.

Rodway testified that he spoke with Appellant a third time on October 22, 2013, at which point Appellant changed his story again. (Tr., pp. 365–366.) Appellant now claimed that he sent West upstairs alone while Appellant went to Townsend's apartment to seek help. Appellant and Townsend returned together to find a shirtless West, collapsed on Appellant's dining room floor but still breathing. Appellant stated in this interview that West did not say anything about being stabbed when Appellant initially encountered him, but was holding his chest.

The state also presented testimony of Dr. Joseph Ohr ("Ohr") who had performed the autopsy on West. Ohr testified that West died from a stab wound which penetrated his heart and went into the right ventricle. (Tr., p. 284.) Ohr also testified that the knife found in Appellant's kitchen sink was "most consistent with the decedent's death." (Tr., p. 289.)

Appellant contends that his story of events remained consistent throughout, but this is clearly contradicted by Rodway. The state presented testimony from at least three other witnesses which contradicted Appellant's statements to the police, and Appellant's statements continued to change over time. The kitchen knife found in Appellant's kitchen sink was consistent with the decedent's wounds. No blood was found outside the apartment or in the stairwell, but was found in Appellant's dining room and kitchen. This record reflects that the state presented sufficient circumstantial evidence that, if believed, would lead a reasonable person to conclude that Appellant caused West's death. Appellant's sufficiency of the evidence argument is without merit.

*Ohio v. Alexander*, No. 16 MA 0113, 2018 WL 1779369, at *5–6 (Ohio Ct. App. Apr. 12, 2018).

The Court agrees. Based on the evidence presented, a rational juror could find Alexander guilty beyond a reasonable doubt. The victim and a knife that was "most consistent" with the victim's death were found in Alexander's apartment. There was no blood found outside the apartment but there was blood found in the sink near Alexander's knife. Alexander was observed to be nervous at the scene and various witnesses testified that Alexander changed his story multiple times throughout the investigation. This is enough evidence for a reasonable juror to conclude Alexander was guilty of murder and felonious assault beyond a reasonable doubt. The cases Alexander asks this Court to rely on are materially different from the one at hand. *See Newman v. Metrish*, 543 F.3d 793, 797 (6th Cir. 2008) (concluding there was insufficient evidence where there was no evidence of the defendant's presence at the scene of the crime); *Tanner v. Yukins*, 867 F.3d 661, 674 (6th Cir. 2017) (finding insufficient evidence where the state's evidence was weak and there was strong exculpatory evidence). Moreover, even if the Court were to conclude that no rational juror could have found Alexander guilty beyond a reasonable doubt, the Court finds that the appellate court's decision was not unreasonable. The court considered all the evidence and concluded that there was enough evidence for a jury to find Alexander guilty of murder and felonious assault. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted). ("The unreasonable application clause requires the state court decision to be more than incorrect or erroneous . . . [it] must be objectively unreasonable." (citations omitted)). Alexander's ground for relief is, therefore, meritless.

## VII. Certificate of Appealability

### A. Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on

appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

  **B.** **Analysis**

Alexander's ground for relief is without merit. If the Court accepts the foregoing recommendation, then Alexander has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue Alexander a certificate of appealability.

**VII.** **Recommendation**

Alexander's ground for relief is without merit. Thus, I recommend that the Court DENY Alexander's petition and not grant him a certificate of appealability.

Dated: October 29, 2021

                s/ *Carmen E. Henderson*
                CARMEN E. HENDERSON
                U.S. MAGISTRATE JUDGE

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).